IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EARL MANASSA, #175099,    :

  Plaintiff,      :

vs.          :  CIVIL ACTION 19-0519-TFM-N

CYNTHIA STEWART, *et al.*,   :

  Defendants.    :

## REPORT AND RECOMMENDATION

Plaintiff Earl Manassa, an Alabama prison inmate proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 and paid the $400 filing fee.  This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R).

When the undersigned screened the original complaint pursuant to 28 U.S.C. § 1915A(b)(1), a report and recommendation was entered to dismiss this action for failure to state a claim upon which relief can be granted. (Doc. 6). At that time, Manassa was informed that he could amend his complaint for the purpose of stating a claim by correcting the noted deficiencies and was advised of the pertinent law and not to rely on the original complaint. (*Id.* at 13). Plaintiff filed an amended complaint (Doc. 7), and the undersigned withdrew the report and recommendation, (Doc. 8). After carefully

reviewing the amended complaint, it is recommended, pursuant to 28 U.S.C. § 1915A(b)(1), that this action be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**I. Amended Complaint.** (Doc. 7).

Manassa named three Holman Correctional Facility ("Holman") wardens as Defendants, Cynthia Stewart, Terry Raybon, and John Doe Mitchell. (Doc. 7 at 5-6). According to Manassa in his amended complaint, on February 28, 2019, when he was transferred from St. Clair Correctional Facility's ("St. Clair") general population, he was immediately placed in Holman's segregation annex without receiving due process. (*Id.* at 10).[1] Manassa identifies two claims arising from this transfer, claim 1 is a Fourteenth Amendment due-process claim and claim 2 is an Eighth Amendment conditions-of-confinement claim.

In Claim 1, Manassa states that section 4.3 of the Alabama Department of Corrections' Male Classification Manual (the "Manual") "clearly shows that the plaintiff was not transferred from St. Clair . . . to Holman . . . due to negative institutional adjustment, and he had not received a disciplinary report or . . . engaged in any wrongdoing whatsoever." (Doc. at 10).[2] When he arrived at Holman, he was not given a

---

[1] On December 2, 2019, Manassa advised the Court his address is now Donaldson Correctional Facility. (Doc. 5). No date was given for the transfer to Donaldson.

[2] Manassa's allegation is not clear. It would require the Court to examine section 4.3 and deduce

12-Hour Notification of Pending Reclassification, which he claims "would justify" his placement in the segregation annex. (*Id.*). The classification division at Holman or the wardens are required to do this, according to section 4.5. of the Manual. (*Id.*). While in the segregation annex, he requested Defendants Stewart, Raybon, and Mitchell, each, on several occasions, to release him, and he submitted self-made grievances to them but received no response. (*Id.* at 11).

In addition, when the segregation review board made its weekly rounds, the wardens gave ambiguous responses, such as "talk to the other wardens." (*Id.*). Manassa further maintains that in order to transfer him from St. Clair's general population to Holman's segregation annex, he should receive due process as his custody would be raised from medium 5 to close custody, according to section 5.2 of the Manual. (*Id.*). Manassa includes in his allegations that he recognizes that the Constitution does not protect an inmate from transfer from one institution to the other institution as long as the confinement is within range of his custody, (*id.*); this statement of the law was included in the withdrawn report and recommendation. (Doc. 6 at 6).

In claim 2, Manassa alleges that when he was transferred from St. Clair's general

---

that because he claims that he did not receive a classification hearing upon his arrival at Holman's segregation annex, his transfer was not due to negative institutional adjustment, a disciplinary, or wrongdoing, otherwise he would have received a hearing as required by section 4.3. (*See* Doc. 7 at 18-19). However, the Court cannot re-write his complaint for him. *Campbell v. Air Jamaica Ltd.,* 760 F.3d 1165, 1168-69 (11th Cir.), *cert. denied,* 574 U.S. 1047 (2014).

3

population to Holman, he asked why he was being placed in the segregation annex. (Doc. 7 at 12). He was told to talk to a warden. (*Id.*). He reiterates some of his allegations contained in claim 1 about requesting the wardens to release him from the segregation annex. (*Id.*). He further alleges that he was left in his segregation cell to suffer "inhumane conditions," such as "no ventilation," "no safety devices," and "an abundance of Rats, Roaches, Cockroaches, Gnats, flies, and other vermin, [which] resulted in a violation of [his] Eighth Amendme[nt]" rights to be free from cruel and unusual punishment.[3] (*Id.*). Manassa describes his segregation cell as "an extremely small, closet[-]sized space [where he] was deprived of most human contact[,]" (*id.* at 14); this description mirrors language in the withdrawn report and recommendation. (Doc. 6 at 9). He was not told if he was placed in disciplinary or administrative segregation. (Doc. 7 at 12).  And "it is well known throughout [Holman] that both population as well as [Holman's Segregation Annex that] the conditions are completely different[.]" (*Id.*).

Manassa alleges that he wrote to Defendant Stewart, Defendant Raybon, and Defendant Mitchell concerning his placement in segregation and his cell's conditions. (*Id.* at 13).  Thus, "each warden drew the inference that a substantial risk of serious harm existed to [him], and yet each warden disregarded that risk[,]" (*id.*); this language mirrors the language contained in the withdrawn report and recommendation. (Doc. 6 at 12).

---

[3] The Court will refer to roaches and cockroaches as roaches.

4

Manassa further contends that he has a liberty interest in not being placed in Holman's segregation annex because he had been in St. Clair's general population before his transfer. (*Id.*). Moreover, Manassa maintains that he had a liberty interest to be free from segregation because he was classified as medium security level five and to place him in "segregation would mean that his custody would have to be raised . . . to Close Custody." (*Id.* at 14). As a consequence, "his placement into . . . [the] Segregation Annex constituted an (ATYPICAL AND SIGNIFICANT HARDSHIP), which in turn would give rise to a[n] Eighth Amendment Violation, as such, the conditions in Holman's (Segregation Annex) are <u>not</u> in any way [comparable] to the conditions in St. Clair' Correctional Facility (Population) or even Holman Correctional Facility (Population)[.]" (*Id.*).

In addition, Manassa attached to the amended complaint copies of pages from the Manual, containing sections 4.3, 4.5, and 5.2, which are referred to in his allegations. (*Id.* at 16-25).

For relief, Manassa requests from each Defendant, $40,000.00 in compensatory damages and $40,000.00 in punitive damages. (*Id.*).

## II.  Standards of Review Under 28 U.S.C. § 1915A(b).

The Court is required to screen a complaint filed a prisoner pursuant to 28 U.S.C. § 1915A, which provides:

> (a) Screening.—The court shall review . . . a complaint in a

civil action in which a prisoner seeks redress from a
governmental entity or officer or employee of a
governmental entity.

(b)  Grounds for dismissal.—On review, the court shall identify
cognizable claims or dismiss the complaint, or any portion of
the complaint, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon
which relief may be granted; or
(2) seeks monetary relief from a defendant who is
immune from such relief.

28 U.S.C. § 1915A(a)&(b). This section does not distinguish between a prisoner who

pays the filing fee or who proceeds *in forma pauperis*.  *Thompson v. Hicks,* 213 F. App'x

939, 942 (11th Cir.)[4], *cert. denied,* 552 U.S. 994 (2007); *Martin v. Scott,* 156 F.3d 578, 580

(5th Cir.), *cert. denied,* 527 U.S. 1041 (1999).

Under 28 U.S.C. § 1915A(b)(1), a claim may be dismissed as "frivolous where it

lacks an arguable basis in law or fact."  *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct.

1827, 1831-32, 104 L.Ed.2d 338 (1989).  A claim is frivolous as a matter of law where,

*inter alia*, the claim seeks to enforce a right that clearly does not exist. *Id.* at 327, 109

S.Ct. at 1833.

Section 1915A(b)(1) also provides that a complaint may be dismissed for failure

to state a claim upon which relief may be granted.  *Mitchell v. Farcass*, 112 F.3d 1483,

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as
persuasive authority." 11TH CIR. R. 36-2 (2005).

1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to "sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949.

When considering a *pro se* litigant's allegations, the court gives them a liberal construction holding them to a more lenient standard than those of an attorney. *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *Campbell v. Air Jamaica Ltd.,* 760 F.3d 1165, 1168-69 (11th Cir.), *cert. denied,* 574 U.S. 1047 (2014). A court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal,* 556 U.S. at 681, 129 S.Ct. at 1951. In addition, a *pro se* litigant "is subject to the

7

relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

## III.  Analysis.

### A.  Fourteenth Amendment Claims.

#### 1.  Claim for Placement in the Segregation Annex.

Manassa claims that his rights under the Eighth and Fourteenth Amendments were violated. (Doc. 7 at 9). The Due Process Clause of Fourteenth Amendment protects against deprivations of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV.  However, not every grievous loss suffered by an inmate at the hands of "the State is sufficient to invoke the procedural protections of the Due Process Clause." *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976).

In the present action, Manassa's transfer from general population to another institution's segregation cell with no ventilation, no safety devices, and an abundance of pests implicates the Due Process Clause's interest in liberty. In order to gain the protection of the Due Process Clause, a liberty interest must be found.  *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). "A liberty interest may arise from the Constitution itself. . . or it may arise from an expectation or interest created by state laws or policies. . . ." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). The Constitution itself does not contain a liberty interest requiring the State to house an inmate in any one particular institution or to protect an

inmate from transfer to another institution when the State has more than one institution. *Meachum,* 427 U.S 224-25, 96 S.Ct. at 2538. Although a transfer to another institution may be grievous to an inmate, "the Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another within the state prison system [as long as] [c]onfinement . . . is within the normal limits or range of custody[.]" *Id.*; *but cf. Vitek v. Jones*, 445 U.S. 480, 493, 110 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (finding the transfer to a mental hospital was not within the range of confinement authorized by an inmate's conviction and sentence and, therefore, may only occur with due process protections). The fact that life is more disagreeable in one prison than another does not implicate a deprivation of a liberty interest. *Id.*; *Moody v. Daggett,* 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d 236 (1976) (holding "the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right" has been rejected). Furthermore, the Constitution itself does not provide Manassa a liberty interest in not being placed in segregation. *Sandin v. Conner,* 515 U.S. 472, 487, 115 S.Ct. 2293, 2302, 132 L.Ed.2d 418 (1995).

Even though the Constitution itself does not support a finding of a liberty interest based on Manassa's allegations, a liberty interest may be found "when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and

9

significant hardship on the inmate in relation to the ordinary incidents of prison life."
*Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999) (quoting *Sandin,* 515 U.S. 472, 484,
115 S.Ct. 2300); *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935
(1974) (finding the prisoner was entitled to due process when deprived of state-created
good-time credits because the prisoner's interest in them was one of real substance).

In the context of segregation, the Court in *Sandin v. Conner*, *supra*, ruled that it
was returning to the due process principles of *Wolff v. McDonnell*, *supra*, and *Meachum
v. Fano*, *supra*, which required an inmate suffer a "grievous loss" before a liberty interest
could be found. *Sandin,* 515 U.S. at 478-83, 115 S.Ct. at 2297-2300. The Court opined
that it would no longer look to the language of a regulation to determine if a liberty
interest was implicated but to the nature of the deprivation.  *Id.* at 481, 115 S.Ct. at 2299.
The *Sandin* Court further ruled that in the future liberty interests "will be generally
limited to freedom from restraint which, while not exceeding the sentence in such an
unexpected manner as to give rise to protection by the Due Process Clause of its own
force, . . . , nonetheless imposes atypical and significant hardship on the inmate in
relation to the ordinary incidents of prison life."  *Id.* at 480, 484, 115 S.Ct. at 2298, 2300
(citations omitted).

In *Sandin*, when the inmate challenged his thirty-day segregation sentence based
on a due-process violation, the Supreme Court found there was no state-created liberty
interest to be free from disciplinary segregation and, therefore, he was not entitled

receive due process. *Id.* at 487, 115 S.Ct. at 2302. The Court concluded his confinement to disciplinary segregation was not a dramatic departure from the ordinary conditions of his incarceration, was the type of discipline he should expect as an incident to his criminal sentence, and "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 485-86, 115 S.Ct. at 2301.

In order to find a liberty interest, the atypical and significant hardship must exist for a significant length of time. *Smith v. Deemer*, 641 F. App'x. 865, 868 (11th Cir. 2016). *Compare Al-Amin v. Donald*, 165 F. App'x 733, 739 (11th Cir. 2006) (finding thirty months' confinement to administrative segregation did not constitute an atypical and significant hardship that would give rise to a liberty interest); *Lekas v. Briley*, 405 F.3d 602, 611 (7th Cir. 2005) (finding the ninety-day confinement to disciplinary segregation was not an atypical and significant hardship); *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (finding a 101-day administrative confinement was not an atypical and significant hardship); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (finding confinement to administrative segregation for six months did not implicate a liberty interest); *Morefield v. Smith*, 404 F. App'x 443, 446 (11th Cir. 2010) (unpublished) (finding a four-year confinement in administrative segregation, although lengthy, did not create a liberty interest considering that the conditions of confinement were similar to those in  the general population), *with Williams v. Fountain,* 77 F.3d 372, 374 n.3 (11th Cir.) (one year

11

in solitary confinement resulted in a deprivation of a liberty interest), *cert. denied,* 519

U.S. 952 (1996); *Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004) (holding five

hundred days in solitary confinement under harsh conditions was an atypical and

significant hardship to which due process attached).

The atypical and significant hardships must be harsh in comparison to the

general population prison. *Compare Wilkinson v. Austin*, 545 U.S. 209, 223-24, 125 S.Ct.

2384, 2394, 162 L.Ed.2d 174 (2005) (finding a liberty interest because the prisoner was

confined indefinitely in a supermax prison and in a cell illuminated twenty-four hours a

day, deprived of almost all human contact even conversation from cell to cell, permitted

to exercise in a small indoor room for one hour daily, and excluded from parole

consideration while there, which were harsher conditions than their death row and

administrative control units); *Magluta*, 375 F.3d at 1282 (finding a liberty interest

because the pretrial detainee was held in solitary confinement in "an extremely small,

closet-sized space" and deprived of most human contact for over 500 days, which was

unlike the conditions for other pretrial detainees and convicted prisoners), *with Deemer,*

641 F. App'x at 868 (deprivations of a writing surface, lock for his storage box, and a

television were not a "dramatic departure" from typical prison life).

Turning to Manassa's allegations, he states that he was not told if he was in

12

administrative or disciplinary segregation.[5] (Doc. 7 at 14). He does not state how long

he was held in the segregation annex after his arrival on February 28, 2019 (Doc. 7 at 4),

although in the withdrawn report and recommendation he was advised that in order to

find a liberty interest, the atypical and significant hardship must exist for a significant

length of time. (Doc. 6 at 8). He did inform the Court on December 2, 2019 that he had

been transferred to Donaldson Correctional Facility and had been transferred to other

facilities after he filed the original complaint on August 12, 2019. (Doc. 5 at 1). He does

not describe the operational differences between the type of segregation where he was

housed and Holman's or St. Clair's general population. Nor does he describe the

differences between the conditions of his segregation cell and Holman's or St. Clair's

general population, although he was advised of this requirement in the withdrawn

report and recommendation. (Doc. 6 at 9). In the amended complaint, he adds a few

more details about his cell than were contained in the original complaint, i.e., his cell

was a small, closet-sized space, he was deprived of most human contact, (which mirror

the language contained in the withdrawn report and recommendation (*id.*)), and there

were no safety devices. (Doc. 7 at 13-14). The other allegations about his cell concern

the lack of ventilation and an abundance of rats, roaches, gnats, flies, and other vermin

---

[5] Manassa alleges that his transfer occurred even though he had not received a disciplinary or engaged in wrongdoing. (Doc. 7 at 10). The Court, however, recognizes, from actions filed on its docket over the years, that segregation can be used for other purposes, e.g., transfers to new institutions, separation of enemies, protection.

are not distinguished from the conditions in general population. (*Id.* at 13; *see* Doc. 1 at 5). No specific allegations are offered concerning the conditions in general population. Rather, Manassa's allegation contrasting his conditions in segregation and those in general population is conclusory – "[I]t is well known throu[g]hout [Holman] that both population as well as [Holman's] (Segregation Annex)[,] the conditions are completely different[.]" (Doc. 7 at 14-15). Thus, Manassa has failed to plausibly allege a claim that he has a liberty interest in not being confined to a segregation cell at Holman. *Cf. Anthony v. Warden*, 823 F. App'x 703, 708 (11th Cir. 2020) (finding a claim was not stated because "any of the conditions to which he was subjected [did not] deprive[] him of a benefit "consistently bestowed ... to prisoners' whose "deprivation ... "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" ") (citation omitted).[6] As a consequence, Manassa has failed to state a claim for denial of due process based on his confinement.

### 2. Classification Claim.

In the amended complaint, Manassa added allegations concerning his classification. He maintains that his classification was medium security level 5, but in order to be held in a segregation cell for reasons other than negative institutional

---

[6] In *Anthony*, the Alabama inmate, after serving his punitive segregation sentence of 25 days, was transferred to Limestone where he was placed in a restrictive housing unit cell or behavior modification cell on preventative status until he was no longer on preventative status, when he would be transferred to another prison. *Anthony*, 823 F. App'x at 707.

14

adjustment, a disciplinary, or other wrongdoing, he contends that he must be held in close custody. However, he alleges that he was not given the 12-Hour Notification of Pending Classification in order to reclassify him to close custody. (Doc. 7 at 10). Nevertheless, he does not state that he was reclassified to close custody. (*See Id.* at 14). Manassa refers to sections 4.3 and 5.2 of the Manual to support his argument. (Doc. 7 at 14). An examination of these sections does not support his contention that he can only be confined in a segregation cell if he is classified to close custody, except for the above noted reasons. Instead, section 4.3 contains the classification review schedule and section 5.2 describes the criteria for close custody and the corresponding housing. (Doc. 7 at 18-19, 23).

Furthermore, there "is no constitutionally protected liberty interest in being classified at a certain security level or housed at a certain prison." *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d 236 (1976)). Full discretion is given to prison officials "to control conditions of confinement, including prisoner classification." *Id*. Thus, because there is no right based on the Constitution to a certain classification, Manassa appears to be advancing an argument that the Manual provides him with a right. But he does not state that he was reclassified, and he does not direct the Court to the specific language in the attachments on which he bases his arguments. Furthermore, the selections from the Manual do not state that segregation can house only certain inmates.

15

Nonetheless, if a violation of a regulation or provision in the Manual occurred, "not every violation of a state agency of its own rules rises to the level of a due process infringement." *Smith v. Georgia*, 684 F.2d 729, 732 n.6 (11th Cir. 1982). Moreover, the *Sandin* Court departed from "the search for a negative implication from mandatory language in prisoner regulations" in order to find a liberty interest and returned "to the due process principles [that] were correctly established and applied in *Wolff* and *Meachum*," which required that a deprivation, a grievous loss, be suffered. *Sandin*, 515 U.S. at 480-83, 115 S.Ct. at 2298-2300. The *Sandin* Court concluded that "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. at 2300. And the *Sandin* Court rejected the argument "that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." *Id.*

The Supreme Court in *Wilkinson v. Austin*, 646 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), addressed "the process by which Ohio classifies prisoners for placement at its highest security prison, known as a "Supermax' facility." *Id.* at 213, 125 S.Ct. at 2388. Implementing the framework from *Sandin*, the Court found that due to the highly restrictive conditions and the indefinite stay that the State had created a

16

liberty interest in avoiding assignment to OSP. *Id.* at 223-24, 125 S.Ct. at 2394-95. The conditions were observed by the Court as being most restrictive in Ohio, even more than the conditions on the death row and the administrative segregation control units, in that "inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact." *Id.* at 214, 125 S.Ct. at 2389. Having found that Ohio created a liberty interest, the Court also determined that the procedures put in place by the Ohio provided due process. *Id.* at 213, 230, 125 S.Ct. at 2389, 2398.

Here, to succeed on a classification claim, Manassa must show that he has a liberty interest in not being assigned to Holman's segregation annex. Thus, Manassa must demonstrate that his confinement there "imposed [an] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Id.* at 223, 125 S.Ct. at 2394. But as discussed above, Manassa has failed to plausibly allege that his placement in Holman's segregation annex imposed an "atypical and significant hardship" on him because he did not specifically contrast the conditions and constraints of segregation to those present elsewhere at Holman or St. Clair, e.g., general population, death row, administrative or disciplinary segregation, whichever one he was not held in. Furthermore, he has not indicated the length of his stay in the segregation annex. Accordingly, the undersigned finds that Manassa has failed to plausibly demonstrate that he has liberty interest in his classification. *See Rolley v. Jenkins,* 2017 WL 1407663, at *8 (N.D. Ala. 2017) (finding "no liberty interests were implicated as a

result of the plaintiff's transfer to WEDCF and placement in segregation without being

told why or being afforded a hearing"), *adopted* 2017 WL 1398513 (N.D. Ala. 2017).

Thus, Manassa has failed to state a classification claim upon which relief can be granted.

### B. Eighth Amendment Claims.

Manassa also complains that his Eighth Amendment rights were violated. The

Eighth Amendment prohibits "cruel and unusual punishments," but it does not require

that places of incarceration be comfortable. *Rhodes v. Chapman,* 452 U.S. 337, 349, 101

S.Ct. 2392, 2401, 69 L.Ed.2d 59 (1981). All that is required is for the State to furnish "its

prisoners with reasonably adequate food, clothing, shelter, sanitation, medical care, and

personal safety." *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir.), *rev'd in part sub*

*nom. Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *see Helling v.*

*McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993); *Hamm v. DeKalb*

*Cty.,* 774 F.2d 1567, 1574 (11th Cir.), *cert. denied,* 475 U.S. 1096 (1986). Prison

conditions violate the Eighth Amendment only when they "involve the wanton and

unnecessary infliction of pain," which is an infliction that is without penological

justification. *Rhodes,* 452 U.S. at 346, 101 S.Ct. at 2399. No fixed test exists to

determine if conditions of confinement are cruel and unusual, as the Eighth Amendment

"must draw its meaning from the evolving standards of decency that mark the progress

of a maturing society." *Id.* (citation omitted).

In order to prevail on an Eighth Amendment inhumane conditions of

confinement claim, an inmate must satisfy an objective component and a subjective

component. *Farmer v. Brennan,* 511 U.S. 825, 836, 114 S.Ct. 1970, 1983, 128 L.Ed.2d 811

(1994). The objective component requires the Court to look to "contemporary

standards of decency," to determine whether the challenged condition resulted in a

deprivation of "the minimal civilized measure of life's necessities." *Rhodes,* 452 U.S. at

347, 101 S.Ct. at 2399; *see Jordan v. Doe,* 38 F.3d 1559, 1565 (11th Cir. 1994). The

challenged condition must be "extreme . . . [b]ecause routine discomfort is "part of the

penalty that criminal offenders pay for their offenses against society[.]'" *Hudson v.

McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). "Nothing so

amorphous as "overall conditions' can rise to the level of cruel and unusual punishment

when no specific deprivation of a single human need exists." *Jordan,* 38 F.3d at 1564;

*see Wilson v. Seiter,* 501 U.S. 294, 305, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991).

The subjective component requires that prison officials be "deliberately

indifferent" to a substantial risk of serious harm. *Farmer,* 511 U.S. at 828-29, 114 S.Ct. at

1974. "[A] prison official cannot be found liable under the Eighth Amendment for

denying an inmate humane conditions of confinement unless the official knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware

of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. at 1979. "A plaintiff

must also show that the constitutional violation caused his injuries." *Marsh v. Butler*

19

*Cty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001), *abrogated on other grounds by Twombly, supra.*

Manassa contends that segregation's conditions violate the Eighth Amendment. (Doc. 7 at 12). In the original complaint, Manassa stated that he has asked each Defendant to release him into population from segregation because he does not belong in segregation, but they did not release him, thereby leaving him to suffer in inhumane conditions in segregation, that is, there is no ventilation in the cells and there is an abundance of rats, roaches, gnats, flies, and other vermin. (Doc. 1 at 5). In the withdrawn report and recommendation, Manassa was advised of the elements for stating an Eighth Amendment claim and that he had not alleged that "he told each Defendant about the conditions in his cell, and that once armed with this knowledge, each Defendant drew the inference that a substantial risk of serious harm existed to Plaintiff and then disregarded the risk." (Doc. 6 at 10-12). In the amended complaint, Manassa alleges that he wrote to each Defendant and "addressed his placement into segregation as such, each warden had in fact first[-]hand knowledge about the conditions of the plaintiff's segregation cell as the plaintiff told each warden about the conditions of [the] segregation cell [and] as such, each warden drew the inference that a substantial risk of serious harm existed to [him], and yet each warden disregarded that risk." (Doc. 7 at 13). In the amended complaint, he describes his cell's conditions as being inhumane and that it had no ventilation, no safety devices, and an abundance of

20

rats, roaches, gnats, flies, and other vermin. (*Id.*). This is the extent of the information about the conditions of Manassa's cell, and each warden's knowledge of the conditions, inference that a substantial risk of serious harm existed to Manassa, and disregard of the risk to Manassa. And an injury from these conditions was not alleged by Manassa.

Even with the benefit of statements of law contained in the withdrawn report and recommendation, Manassa has not alleged a plausible Eighth Amendment deprivation. His allegations are lacking in specific facts to nudge his allegations across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974. Moreover, they lack the heft necessary to show that he is entitled to relief, *id.* at 557, 127 S.Ct. at 1966, and that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. 678, 129 S.Ct. at 1949. Furthermore, his allegations are vague and conclusory and, therefore, are subject to dismissal for failure to state a claim. *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984).

In examining the objective component, and with regard to the lack of ventilation in his cell, it appears that there was ventilation because Manassa survived. So, this allegation does not accurately convey what Manassa intended or this allegation did not convey a substantial risk of serious harm. Moreover, there must have been ventilation in the cell because pests were alleged to be in an abundant quantity in the cell. *Cf. Chandler v. Crosby,* 379 F.3d 1278, 1295 (11th Cir. 2004) (holding that the severity and duration inform whether the claims of inadequate cooling and ventilation are

unconstitutional). He also claims there were no safety devices. This brief allegation is vague and conclusory and, therefore, fails to state a claim. *Fullman,* 739 F.2d at 556-57.

Furthermore, the simple allegation of an abundance of rats, roaches, gnats, flies, and other vermin likewise falls short of conveying a substantial risk of serious of harm. This condition is pled in a vague and conclusory manner. This allegation does not remove the pest situation from an ordinary pest situation that may be experienced in a home in the south. Nor does it convey that pests presented a substantial risk of serious harm to Manassa.

Even though these conditions on their own do not demonstrate a substantial risk of serious harm, they may be considered in combination to determine if they result in the deprivation of a single human need. *Saunders v. Sheriff of Brevard Cty.,* 735 F. App'x 559, 571 (11th Cir.), *cert. denied*, 139 S.Ct. 1325 (2019). Manassa has not pointed to a deprivation of single human need that these conditions in combination caused, nor can the Court identify such a need from the allegations. *Cf. Wilson,* 501 U.S. at 304, 111 S.Ct. at 2321 (reasoning that "a low cell temperature at night combined with a failure to issue blankets" would result in the deprivation of a single human need for warmth). Moreover, the conditions alone or in combination must be "extreme." *Chandler,* 379 F.3d at 1289 (citing *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992)). The allegations do not convey that the conditions were extreme. Thus, Manassa's allegations do not satisfy the objective component of an Eighth Amendment claim.

22

Failing to satisfy one element of an Eighth Amendment claim, his Eighth Amendment claims are due to be dismissed for failure to state a claim upon which relief can be granted. *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977.

Nevertheless, the subjective component will be addressed. The subjective component, which requires prison officials be "deliberately indifferent" to a substantial risk of serious harm, fails to state a plausible claim as well. *Farmer,* 511 U.S. at 828-29, 114 S.Ct. at 1974. Manassa's allegations reiterate the elements of the subjective component but have almost no facts to support them. And the allegation that contains a couple of facts is vague and conclusory. *See Fullman*, 739 F.2d at 556-67 (vague and conclusory allegations are subject to dismissal). That is, Manassa alleges that he wrote to each warden "address[ing] his placement into [s]egregation as such each warden had in fact first[-]hand knowledge about the conditions of the plaintiff's segregation cell as the plaintiff told each warden about the conditions of [the] segregation cell." (Doc. 7 at 13). This is the extent of the facts concerning the subjective component. The other allegations - "as such, each warden drew the inference that a substantial risk of serious harm existed to [him], and yet each warden disregarded that risk"- are not supported by specific facts. (*Id.*). This type of bald pleading of a cause of action's elements is not adequate for stating a claim. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 ("threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice"). "'[W]hile notice pleading may not require that the pleader allege a

23

"specific fact' to cover every element or allege "with precision' each element of a claim, it is still necessary that a complaint "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."" *Richardson v. T.R.,* 2010 WL 7852456, at *1 (M.D. Ala. 2010) (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007)).  Manassa has not provided facts, whether direct or inferential, to support all the elements for the subjective component of an Eighth Amendment claim.

Accordingly, Manassa has failed to state an Eighth Amendment claim upon which relief can be granted.

## IV.  Conclusion.

Manassa was given the opportunity to amend his complaint after having been informed of the pertinent law and the deficiencies in his original complaint. *See Bryant v. Dupree,* 252 F.3d 1161, 1663 (11th Cir. 2001) ("[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice") (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). Thus, based upon the foregoing reasons, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915A(b)(1) because Manassa's amended complaint fails to state a claim upon which relief can be granted.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this 20th day of November, 2020.

/s/ KATHERINE P. NELSON

**UNITED STATES MAGISTRATE JUDGE**